# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
    **Plaintiff,**

  v.                                                       **Case No. 09-CR-71**

**WILLIAM BRADFORD**
    **Defendant.**

## DECISION AND ORDER

Defendant William Bradford, charged with possessing a firearm as a felon, moved to suppress the gun, alleging a violation of his Fourth Amendment rights. Specifically, he alleged that the police violated his rights by (1) pulling him over, (2) patting him down and arresting him, and (3) searching his car after his arrest. The magistrate judge handling pre-trial proceedings in this case held a hearing, then issued a recommendation that the motion be denied.

Defendant objects to the recommendation in part, challenging the magistrate judge's conclusion regarding the vehicle search. I conduct de novo review of that portion of the recommendation to which specific objection is made.[1] See Fed. R. Crim. P. 59(b); 28 U.S.C. § 636(b)(1); United States v. O'Neill, 27 F. Supp. 2d 1121, 1126 (E.D. Wis. 1998). De novo review does not mean that I must conduct a de novo evidentiary hearing. See United States v. Raddatz, 447 U.S. 667, 673-76 (1980). Neither side requests a new hearing, and I find the record made before the magistrate judge sufficient for me to rule. For the reasons that follow, I adopt the recommendation and deny the motion to suppress.

---

[1] If a party only objects to parts of the magistrate's recommendation, he waives review of the issues to which he did not object. See, e.g., Willis v. Caterpillar Inc., 199 F.3d 902, 904-05 (7th Cir. 1999); Fed. R. Crim. P. 59(b)(2).

## I. FACTS

City of Milwaukee Police Officer Timothy Koestering testified that on February 3, 2009, at about 2:23 a.m., as he was traveling southbound through the intersection of 35th Street and North Avenue in a marked police squad car, he observed a vehicle proceeding through the intersection of 33rd Street and North Avenue at a high rate of speed. (May 20, 2009 Evid. Hr'g Tr. at 8-13.) Koestering had an unobstructed view of the other car, which he estimated to be traveling at about 40 mph in a 25 mph zone. (Id. at 17-19.)

Based on the vehicle's speed, apparent disregard of the traffic control signal at the intersection, and the time of day, Koestering suspected that the vehicle was stolen. He immediately accelerated parallel to the vehicle on 35th Street, noticing that the vehicle was exceeding his speed of about 45 mph. (Id. at 20-21; 35.) When he reached Vine Street, Koestering made a left turn toward the other car, which had stopped at the intersection of 33rd and Vine despite the absence of a stop sign at that location. Koestering stopped but was unable to see inside the car due to window tint. (Id. at 22.) The car proceeded after a few seconds, then pulled over in front of 1825 North 33rd Street. Koestering pulled behind the car, activated his emergency lights and shined a spotlight on the car, then ordered the driver to shut off the ignition, throw out the keys and show his hands. (Id. at 23-24.) Koestering yelled at least eight commands over the course of about a minute and a half before the driver finally complied. (Id. at 24.)

Koestering slowly approached, with his gun drawn, and observed a male driver and two female passengers. He radioed for backup, then ordered the driver out of the car based on his failure to obey commands. Koestering testified that in his experience when a person delays compliance in this manner he is usually hiding something, drugs or a gun. (Id. at 25-26; 36.)

2

After he got the driver out, Koestering took him to the back of the vehicle and conducted a pat-down for officer safety, immediately feeling a crack pipe in his right front coat pocket. Koestering testified that he had recovered hundreds of crack pipes in his career. (Id. at 26; 37.) Koestering arrested the driver (later identified as defendant) for possession of drug paraphernalia, placing him in the back of a squad car. (Id. at 27; 39.)

Koestering returned to defendant's vehicle, ordered the front seat passenger out and patted her down, then ordered the backseat passenger out. Koestering then searched the front area of the car for drugs and weapons, locating suspected crack cocaine in plain view on the front passenger seat.[2] (Id. at 28-29; 43.) Koestering testified that he wanted to check the back seat for more drugs, so he tilted the driver's side front seat forward, at which time he observed a 9 mm hollow point round.[3] Based on the discovery of the bullet, Koestering believed the car also contained a gun, so he decided to conduct a more extensive search. Under the driver's seat he located a 9 mm handgun wedged between the seat motor and the cushion spring. (Id. at 29-30; 52-53.)

After the search, defendant's car was towed to the City of Milwaukee tow lot. Koestering testified that pursuant to police policy, prior to towing a vehicle officers conduct an inventory search to recover any property from the car. Koestering testified that such a search was conducted in this case. (Id. at 33-34; 48.)

---

[2] Koestering testified that after the three occupants had been removed from the car, he also saw a corner cut of crack cocaine on the ground by the driver's side door. (Id. at 65.)

[3] Koestering indicated that this was a two-door vehicle, requiring that the front seat be tilted forward to access the back. (Id. at 51.)

3

## II.  DISCUSSION

As the magistrate judge properly concluded, Officer Koestering possessed probable cause to pull defendant over for speeding.[4]  See Whren v. United States, 517 U.S. 806, 809-10 (1996) (holding that police can stop a vehicle when they have probable cause to believe a traffic violation has occurred).  As the magistrate judge explained, Koestering clearly observed defendant traveling at a high rate of speed, which he then "paced" by traveling on a parallel street.  Defendant does not dispute this conclusion in his objections.

Koestering also lawfully ordered defendant out of the car.  See Pennsylvania v. Mimms, 434 U.S. 106, 111 n.6 (1977) (holding that "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures").  In his post-hearing brief, defendant noted that motorists stopped for speeding are usually asked to produce a driver's license, then issued a ticket.  However, the Constitution does not forbid the actions taken by the officer here.  Defendant does not argue otherwise in his objections.

I likewise agree with the magistrate judge that Koestering lawfully patted defendant down.  An officer may, following a traffic stop, conduct a pat-down search for weapons if the officer has specific and articulable facts supporting a suspicion that the individual could be armed or presents a threat or danger to the officer or others.  United States v. Thomas, 512 F.3d 383, 388 (7th Cir. 2008) (citing Terry v. Ohio, 392 U.S. 1, 27 (1968); United States v. Shoals, 478 F.3d 850, 853 (7th Cir. 2007)).  "The officer need not be certain that the individual

---

[4]Although defendant had already stopped by the time Koestering pulled behind him and activated the squad's emergency lights, I will assume that this initial encounter constituted a seizure within the meaning of the Fourth Amendment.  Cf. United States v. Whitaker, 546 F.3d 902, 906-08 (7th Cir. 2008).

4

is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others might be in danger." Id.

In the present case, as the magistrate judge explained, Koestering observed defendant drive at a high rate of speed in the early morning hours, then stop at an intersection despite the absence of a stop sign. Koestering ordered defendant to shut off the car, throw out the keys and show his hands at least eight times before defendant complied. Because of the dark window tint, Koestering could not see what was going on in the car during this time, and he suspected the three occupants may be hiding drugs or guns. Based on these circumstances, it was reasonable for Koestering to pat defendant down to ensure officer safety. See, e.g., United States v. Soares, 521 F.3d 117, 121 (1st Cir. 2008) (upholding pat-down where motorist failed to follow commands). During the pat down, Koestering felt an object in defendant's jacket which he immediately recognized as a crack pipe. See Minnesota v. Dickerson, 508 U.S. 366, 375-76 (1993) ("If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context."). On discovering the pipe, Koestering had probable cause to arrest defendant for possession of drug paraphernalia. See Wis. Stat. § 961.573. Again, defendant does not challenge these conclusions in his objections.

Defendant does object to the magistrate judge's conclusion regarding the vehicle search, relying on the Supreme Court's recent decision in Arizona v. Gant, 129 S. Ct. 1710 (2009). In Gant, the Justices narrowed the search-incident-to-arrest exception to the warrant requirement, holding that:

5

> Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies.

Id. at 1723-24. The Court found neither of those justifications applicable in the Gant case: the suspect, arrested for driving with a suspended license, was handcuffed and locked in a squad car at the time of the search, which was not likely to uncover evidence related to the offense of arrest.

In the present case, as the magistrate judge explained, defendant was arrested for possession of drug paraphernalia (not a traffic offense), making it reasonable for the officer to search the car for drugs. Further, once the officer found the bullet, it was reasonable for him to look for a gun. Cf. Gant, 129 S. Ct. at 1721 (noting that under United States v. Ross, 456 U.S. 798, 820-821 (1982), police may, based on probable cause that a vehicle contains evidence of criminal activity, search of any area of the vehicle in which the evidence might be found, and that Ross allows searches for evidence relevant to offenses other than the offense of arrest, and the scope of the search authorized is broader).

Defendant argues that Koestering should have stopped his search after he found the crack cocaine on the front passenger seat, but nothing in Gant suggests that a permissible search incident to arrest must stop as soon as any contraband is found. Nor does the record show that Koestering searched areas of the car where evidence of the offense of arrest could not be located. Defendant suggests that Koestering "ransacked" the car, but the record does not support that contention either. As discussed above, Koestering moved the front seat in order to check the back for more drugs, at which point he saw the bullet. He then looked under

6

the front driver's seat and saw the gun. Far from a ransacking, this was a limited search, fully justified by the circumstances.[5]

Finally, I agree with the magistrate judge that even if the search of the car exceeded the bounds set by Gant, the government demonstrated that the gun would inevitably have been discovered pursuant to the inventory search. Under the inevitable discovery doctrine, if the prosecution can establish by a preponderance of the evidence that the evidence ultimately or inevitably would have been discovered by lawful means then the deterrence rationale animating the exclusionary rule has so little basis that the evidence should be received. Nix v. Williams, 467 U.S. 431, 444 (1984). In order for the doctrine to apply, the government must show "a chain of events that would have led to a warrant (or another justification) independent of the search." United States v. Brown, 64 F.3d 1083, 1085 (7th Cir. 1995). It did so here.

Koestering testified that after defendant's arrest the car was towed to the City of Milwaukee tow lot as prisoner property; that pursuant to Milwaukee police policy towed vehicles are subject to an inventory search; and that such a search was conducted in this case. Inventory searches are a well-recognized exception to the warrant requirement. See South Dakota v. Opperman, 428 U.S. 364, 369 (1976). A warrantless inventory search is constitutionally permissible if (1) the individual whose possession is to be searched has been lawfully arrested, and (2) the search is conducted as part of the routine procedure incident to incarcerating an arrested person and in accordance with established inventory procedures. United States v. Jackson, 189 F.3d 502, 508-09 (7th Cir. 1999). Here, defendant was lawfully

---

[5]Defendant contends that the car was subject to more than one search, but the record shows otherwise. Koestering observed crack cocaine on the front seat, moved the driver's seat forward to get a look in the back, found the bullet, then looked under the seat, locating the gun. He made return trips to the car only to remove the three occupants.

7

arrested and the search was performed pursuant to a routine procedure.

Defendant argues that applying the inevitable discovery doctrine under these circumstances will eviscerate Gant, but that is not so. The doctrine will apply only when the government shows that an inventory search would inevitably have been conducted (in this case such a search was conducted) pursuant to police policy or regulation.

### III.  CONCLUSION

**THEREFORE, IT IS ORDERED** that the magistrate judge's recommendation (R. 38) is adopted, and defendant's motion to suppress (R. 19) is **DENIED**.

**IT IS FURTHER ORDERED** that this matter is scheduled for **STATUS** on **Monday, November 9, 2009, at 11:30 a.m.**

Dated at Milwaukee, Wisconsin, this 5th day of November, 2009.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge

8