# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
    **Plaintiff,**

v.                                          **Case No. 09-CR-71**

**WILLIAM BRADFORD**
    **Defendant.**

## MEMORANDUM

Defendant William Bradford pleaded guilty to possessing a firearm as felon, contrary to 18 U.S.C. § 922(g)(1). Ordinarily, this offense carries a penalty range of 0-10 years' imprisonment, 18 U.S.C. § 924(a)(2), but defendant's pre-sentence report ("PSR") determined that he qualified for an enhanced sentence under the Armed Career Criminal Act ("ACCA"), U.S.C. § 924(e). Under the ACCA, a person who violates § 922(g) and has three previous convictions for a "violent felony" or a "serious drug offense," or both, committed on occasions different from one another, must be imprisoned for not less than 15 years. 18 U.S.C. § 924(e)(1). The ACCA further explains that:

> the term "serious drug offense" means–
>
> (i) an offense under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46, for which a maximum term of imprisonment of ten years or more is prescribed by law; or
>
> (ii) an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law;

> (B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that–
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]

18 U.S.C. § 924(e)(2).

Defendant's PSR sets forth three possible ACCA predicates – (1) possession of a short-barreled shotgun, (2) substantial battery, and (3) possession with intent to distribute cocaine – all in Wisconsin state court. Defendant concedes that the third conviction qualifies as a serious drug offense but argues that the first two are not violent felonies. I disagree with defendant regarding the substantial battery conviction but agree regarding the short-barreled shotgun case. I therefore find that he does not qualify as an armed career criminal.

## I. STANDARD FOR DETERMINING ACCA PREDICATES

In determining whether a particular conviction qualifies as a violent felony under the ACCA, the court must apply a categorical approach, looking to the statutory elements of the offense in question rather than the specific conduct in which the defendant engaged. See, e.g., James v. United States, 550 U.S. 192, 202 (2007); United States v. Fife, 624 F.3d 441, 445 (7th Cir. 2010), cert. denied, 2011 WL 124217 (U.S. Feb. 22, 2011); United States v. Dismuke, 593 F.3d 582, 589 (7th Cir. 2010); United States v. Woods, 576 F.3d 400, 403 (7th Cir. 2009). If the defendant was convicted under a statute that may be violated in several ways, some that might constitute a violent crime and some that might not, the court may apply a modified categorical approach and look to the defendant's charging document, plea agreement, or other

2

similar judicial record for the limited purpose of determining which part of a divisible statute he violated. See, e.g., Shepard v. United States, 544 U.S. 13, 26 (2005); Fife, 624 F.3d at 445; United States v. Ellis, 622 F.3d 784, 798 (7th Cir. 2010).

## II. SUBSTANTIAL BATTERY

Under Wisconsin's battery statute, "Whoever causes bodily harm to another by an act done with intent to cause bodily harm to that person or another without the consent of the person so harmed is guilty of a Class A misdemeanor." Wis. Stat. 940.19(1). If the person "causes substantial bodily harm to another by an act done with intent to cause bodily harm to that person or another" then he is guilty of a felony. Wis. Stat. § 940.19(2). Defendant was convicted of violating sub-section (2) of the statute. In United States v. Peters, 462 F.3d 716, 720 (7th Cir. 2006), the court of appeals held that the defendant's conviction for substantial battery in violation of Wis. Stat. § 940.19(2) qualified as a "crime of violence" under the career offender sentencing guideline, U.S.S.G. § 4B1.2, which employs a virtually identical definition as the ACCA. See United States v. Taylor, No. 10-2947, 2010 WL 5367918, n.2 (7th Cir. Dec. 29, 2010) ("As we have done in prior cases, we refer to cases dealing with the ACCA and the career offender guideline provision interchangeably."). Peters thus appears to doom defendant's claim that his battery conviction does not qualify as a violent felony under the ACCA.

Defendant cites Johnson v. United States, 130 S. Ct. 1265 (2010), for the proposition that battery convictions do not automatically qualify under the ACCA. In Johnson, the Supreme Court determined that a violation of Florida's battery statute did not constitute a violent felony under the "use of force" prong of the definition. However, Johnson did not involve a battery statute like Wisconsin's; nor did the Court consider the so-called "residual clause" of the violent

3

felony definition, i.e. whether the offense "otherwise involves conduct that presents a serious potential risk of physical injury to another." The case is therefore distinguishable.

First, Florida's battery statute, unlike Wisconsin's, may be violated by mere offensive touching, no matter how slight, id. at 1269-70, while the ACCA's use of force prong requires the use of "violent force – that is, force capable of causing physical pain or injury to another person." Id. at 1271. As I explained in United States v. Marciniak, No. 10-CR-184, 2011 WL 124299 (E.D. Wis. Jan. 14, 2011), Wisconsin's battery statute is not violated by conduct that is merely "offensive"; rather, the defendant must cause bodily harm, which necessarily requires the use of violent physical force. Second, the government did not in Johnson argue that the defendant's conviction qualified under the residual clause, id. at 1274, so the Court had no occasion to consider whether the offense involved conduct that presented a serious potential risk of physical injury. It seems plain that such a risk will exist – indeed, the risk will have materialized – when the defendant, in fact, "causes substantial bodily harm to another by an act done with intent to cause bodily harm." For these reasons, I find that substantial battery under Wis. Stat. § 940.19(2) is a violent felony.[1]

### III. POSSESSION OF SHORT-BARRELED SHOTGUN

Under Wis. Stat. § 941.28(2), "No person may sell or offer to sell, transport, purchase, possess or go armed with a short-barreled shotgun or short-barreled rifle." The parties agree, and the PSR without objection states, that defendant was convicted of possession of a short-

---

[1] The Peters court did not specify whether it found battery a crime of violence because it involved the use of force, because it involved conduct that presented a serious potential risk of physical injury to another, or both. For the reasons stated herein and in Marciniak, I find that it qualifies under the use of force prong. Nothing in Johnson or any other post-Begay case suggests a different conclusion. Battery likely also qualifies under the residual clause, although I need not discuss that issue further.

4

barreled shotgun.[2] Because this offense is not one of the listed examples, and it does not involve the use of force, I must determine whether it qualifies under the residual clause.

The Seventh Circuit previously held that the possession of a sawed-off shotgun constitutes a violent felony under the residual clause. See United States v. Upton, 512 F.3d 394, 404 (7th Cir. 2008). However, the Supreme Court's decision in Begay v. United States, 553 U.S. 137 (2008), which came down after Upton, requires reconsideration of the issue. See Dismuke, 593 F.3d at 590 (noting that although it had previously determined that Wisconsin's vehicular-fleeing offense qualified as a violent felony under the residual clause, "Begay's alteration of the framework for deciding residual-clause cases requires us to reconsider the matter"); see also United States v. Polk, 577 F.3d 515, 517 (3d Cir. 2009) (holding that the court had to reconsider, post-Begay, whether the offense of possession of a weapon in prison qualified as a crime of violence).

At issue in Begay was whether a felony conviction for recidivist drunk driving qualified as a violent felony. The Supreme Court assumed that drunk driving involved conduct that presented a serious potential risk of physical injury to another, but concluded that this was not enough. 128 S. Ct. at 1584. Focusing on the offenses enumerated in the statute – burglary, arson, extortion, and crimes involving the use of explosives – the Court concluded that the residual clause covers only "crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves." Id. at 1585. The Court stated that the presence of the

---

[2] Given this presentation, I need not decide whether the statute is divisible under Woods or, if so, whether the result would be different for a defendant who sold, transported, purchased, or went armed with such a weapon. In his objections, defendant states that in his case there is no indication that the weapon was used; the gun was not loaded and no ammunition was found; and it is unclear whether the gun was even operable. As noted above, I apply a categorical approach, under which the underlying facts are not considered.

5

word "otherwise" after the list of included crimes did not undermine this limiting construction because "otherwise" could "refer to a crime that is similar to the listed examples in some respects but different in others – similar, say, in respect to the degree of risk it produces, but different in respect to the way or manner in which it produces that risk." Id. at 1586 (internal quotation marks omitted). The Court further stated that a predicate crime will be "similar in kind" to the enumerated crimes if it involves the same sort of "purposeful, violent, and aggressive" conduct as the enumerated crimes. Id. at 1586-87. Because drunk driving is a strict liability crime, the Court concluded it was too unlike the example crimes to be covered by the residual clause and thus did not qualify as a violent felony under the ACCA. Id. at 1588.

Under Begay, then, a residual clause predicate crime must (1) present a serious potential risk of physical injury similar in degree to the enumerated crimes of burglary, arson, extortion, or crimes involving the use of explosives; and (2) involve the same or similar kind of "purposeful, violent, and aggressive" conduct as the enumerated crimes. Fife, 624 F.3d at 447; Dismuke, 593 F.3d at 591. For the reasons that follow, I find that possession of a short-barreled shotgun fails both prongs of the Begay test: it does not involve "violent" and "aggressive" conduct, as those words are commonly understood; and it does not present the same or similar degree of risk as the closest enumerated offense, i.e., the use of explosives. I will survey the post-Begay case-law on this issue and in so doing explain the bases for my conclusion.

Courts have differed, post-Begay, on whether possession of a short-barreled or sawed-off shotgun constitutes a violent felony under the ACCA. Compare United States v. Vincent, 575 F.3d 820 (8th Cir. 2009), cert. denied, 130 S. Ct. 3320 (2010) (holding, over a dissent, that the offense is a violent felony), with United States v. McGill, 618 F.3d 1273 (11th Cir. 2010)

(holding that possession of a short-barreled shotgun is not a violent felony); and United States v. Haste, 292 Fed Appx. 249 (4th Cir. 2008) (holding, on remand for reconsideration in light of Begay, that possession of a sawed-off shotgun is not a violent felony under the ACCA); see also United States v. Serafin, 562 F.3d 1105 (10th Cir. 2009) (holding that possession of a short-barreled rifle is not a crime of violence under 18 U.S.C. § 924(c)(1)).[3] McGill and the dissenting judge in Vincent have the better of the argument.[4]

In Vincent, the majority held that a violation of the Arkansas ban on possession of short-barreled shotguns qualified as a violent felony. The majority first concluded that possession of a sawed-off shotgun, a dangerous weapon with no lawful purpose, presents a serious potential risk of physical injury to another. 575 F.3d at 825. Turning to the more difficult

---

[3] Courts have held, post-Begay, that possession of a short-barreled shotgun qualifies as a crime of violence under the career offender sentencing guideline, U.S.S.G. § 4B1.2. See, e.g., United States v. Hood, 628 F.3d 669 (4th Cir. 2010); United States v. Hawkins, 554 F.3d 615 (6th Cir.), cert. denied, 129 S. Ct. 2817 (2009); United States v. Moore, 326 Fed. Appx. 794 (5th Cir.), cert. denied, 130 S. Ct. 337 (2009). However, the application notes to § 4B1.2 specifically state that unlawfully possessing this type of firearm is a crime of violence under the guideline, Moore, 326 Fed. Appx. at 795 (citing U.S.S.G. § 4B1.2 cmt. n.1), while the ACCA contains no similar commentary, Hood, 628 F.3d at 672 ("While in ACCA, Congress provided no guidance through relevant history or commentary as to whether a sawed-off shotgun constituted a predicate 'violent felony,' the Sentencing Commission has expressly addressed the question of whether a sawed-off shotgun constitutes a 'crime of violence.'"). Thus, although the career offender guideline and the ACCA are generally interpreted in the same way, there is "a fundamental difference between ACCA and the Guidelines with respect to their treatment of sawed-off shotguns." Id.; see also Hawkins, 554 F.3d at 617 (holding, based on the application note, that possession of a sawed-off shotgun is a crime of violence under § 4B1.2, while re-affirming the holding of United States v. Amos, 501 F.3d 524, 530 (6th Cir. 2007), that this offense is not a violent felony under the ACCA). Further, as I discuss later in this memorandum, the application note considers only half of the question before me, i.e., whether such possession poses a risk of injury; the note does not address whether this offense is violent and aggressive. See n.6, infra.

[4] Haste was a brief, unpublished per curiam opinion, which offered little analysis. I therefore do not discuss it further.

7

question – whether possession of a sawed-off shotgun is roughly similar, in kind as well as degree of risk posed, to the enumerated offenses – the majority noted that, unlike drunk driving, this is not a strict liability crime.  Further, like explosives, a sawed-off shotgun can inflict indiscriminate carnage.  Id. at 826 (citing Upton, 512 F.3d at 404).  Finally, the court considered, as persuasive authority, the commentary to U.S.S.G. § 4B1.2(a), which provides that possession of a short-barreled shotgun (or other weapon covered by 26 U.S.C. § 5845) constitutes a crime of violence under the career offender guideline.  Id.

While I do not quarrel with the notion that short-barreled shotguns are dangerous and pose a serious risk of injury, I cannot agree that the offense is roughly similar in kind to the enumerated offenses.[5]  The Vincent court offered no explanation as to how a possessory offense can be "violent" or "aggressive."  Rather, the Vincent court relied on a Tenth Circuit case holding that a prisoner's possession of a weapon was roughly similar, in kind as well as degree of risk, to the § 924(e) listed crimes.  Id. at 827 (citing United States v. Zuniga, 553 F.3d 1330, 1334-36 (10th Cir. 2009)), stating:

> Possession of a weapon in prison, the Zuniga court concluded, is violent and aggressive because it "creates the possibility – even the likelihood – of a future violent confrontation."  Similarly, possession of a sawed-off shotgun – a weapon with no lawful purpose – is purposeful, violent, and aggressive conduct.

Id. at 827 (internal citation omitted).  This confuses the risk of injury that may result from the offense conduct with the violent/aggressive nature of the conduct itself; post-Begay these issues must be analyzed separately.  See Polk, 577 F.3d at 518 (explaining that under Begay

---

[5]Although there does not appear to be a clear answer in the case-law, I will accept that Wis. Stat. § 941.28, as construed by the Wisconsin judiciary, is not a strict liability offense; nor may it be violated negligently or recklessly.  See generally State v. Brown, 315 Wis. 2d 770, 762 N.W.2d 864 (Ct. App. 2008); cf. Staples v. United States, 511 U.S. 600 (1994).

8

the offense must present a serious potential risk of physical injury <u>and</u> be roughly similar in kind and degree to the enumerated offenses). As the dissenting judge in <u>Vincent</u> explained:

> The crux of the Court's explanation for its conclusion seems to be that, "[l]ike the listed crimes, possession of a sawed-off shotgun is illegal precisely because it enables violence or the threat of violence." In my view, the Court's explanation fails to answer . . . whether the crime itself typically <u>involves</u> violent and aggressive conduct. This subtle difference in terminology has significant consequences; after all, many crimes that do not themselves involve violent and aggressive conduct may nevertheless enable violence or the threat of violence.

<u>Vincent</u>, 575 F.3d at 830 (Gruender, J., dissenting).

The dissenting judge further noted that the possession of explosives also enables violence or the threat of violence, yet the ACCA lists as an enumerated offense the <u>use</u> of explosives, not their possession. <u>Id.</u> (citing <u>United States v. Flores</u>, 477 F.3d 431, 436 (6th Cir. 2007) ("[T]ellingly, the [ACCA] provides that the use – rather than the possession – of explosives is conduct that rises to the level of a violent felony.")). The judge explained that:

> The core difference between criminal use and criminal possession – whether of an explosive device or a sawed-off shotgun – is that use typically involves violent and aggressive conduct, while simple possession merely creates a potential for violence and aggression that is ordinarily realized only if possession ripens into use. . . .
>
> In effect, the Court's holding risks expanding the ACCA's residual clause to include any crime that has a hypothetical connection to violence. Part of the conceptual difficulty may stem from the Supreme Court's introduction of the terms "violent" and "aggressive" in <u>Begay</u> without defining them or "explain[ing] in other than conclusory [language] why [the crime of driving under the influence] was not violent or aggressive." <u>United States v. Herrick</u>, 545 F.3d 53, 58 (1st Cir. 2008). The First Circuit has attempted to clear up the resulting confusion by announcing workable definitions of "violent" and "aggressive" that comport with the ordinary meaning of those terms. In particular, the court defined "violent" as "marked by extreme force or sudden intense activity," <u>id.</u> (quoting <u>Merriam-Webster's Collegiate Dictionary</u> 1396 (11th ed. 2003)), and defined "aggressive" as "tending toward or exhibiting aggression," which the court in turn defined as "a forceful action or procedure (as an unprovoked attack)[,] esp[ecially] when intended to dominate or master," <u>id.</u> (quoting <u>Merriam-Webster's Collegiate Dictionary</u> 24 (11th ed. 2003)).

9

> Once the question is properly framed and the relevant terms are expressly defined, it becomes plain that simple possession of a sawed-off shotgun itself does not involve violent and aggressive conduct in the manner of burglary, arson, extortion, or criminal use of explosives. Indeed, to say that simple possession of a weapon is "marked by extreme force or sudden intense activity" or exhibits "a forceful action . . . intended to dominate or master" would strain the ordinary meaning of the terms violent and aggressive.

Id. at 830-31 (Gruender, J., dissenting) (footnotes omitted);[6] see also Polk, 577 F.3d at 519 (holding that while possession of a weapon in prison involves a high degree of risk, under Begay the crime must also be similar to the enumerated offenses, which "involve overt, active conduct that results in harm to a person or property").

Post-Begay, courts should draw a distinction between "active" and "passive" crimes to determine whether they involve violent and aggressive conduct. See Polk, 577 F.3d at 519. Because possession of a short-barreled shotgun, a passive crime, does not involve such conduct, it does not qualify as a violent felony under the ACCA.

McGill provides a somewhat different route to the same destination. The McGill court declined to consider whether possession of a short-barreled shotgun is purposeful, violent, or aggressive. 618 F.3d at 1277. Rather, the court noted that Congress regulates explosives and short-barreled shotguns similarly under the National Firearms Act ("NFA"). See 26 U.S.C. § 5845(a). The Court then noted that, even accepting that short-barreled shotguns are more dangerous than ordinary firearms, akin to explosives in terms of dangerousness and violence,

---

[6] As Judge Gruender explained, the Vincent majority's reliance on U.S.S.G. § 4B1.2 and its application notes is misplaced. Post-Begay, the court must consider whether a potential ACCA predicate (1) presents a serious risk of injury and (2) typically involves purposeful, violent, and aggressive conduct. The commentary to § 4B1.2 addresses the former but not the latter, id. at 832; see also McGill, 618 F.3d at 1277, and it is possible to find this offense a crime of violence under the guideline but not a violent felony under the ACCA, see Hood, 628 F.3d at 672; Hawkins, 554 F.3d at 617.

10

"Congress included only the use, but not the possession of, explosives among the ACCA's example crimes." McGill, 618 F.3d at 1277. The court thus concluded that possession of a short-barreled shotgun is not similar in kind to the use of explosives, the closest analog among the enumerated ACCA predicates. Id. The court stated that:

> the NFA defines and regulates short-barreled shotguns and explosives in the same firearms category and heavily proscribes their manufacture and possession. Possession of prohibited explosives is at least as inherently dangerous, aggressive, and threatening as possession of a prohibited short-barreled shotgun. Yet Congress did not include the possession of explosives in the ACCA's list of example crimes. We cannot classify possessing one type of NFA outlawed weapon as a violent felony when the ACCA speaks only to the use of another. To do so would read the word "use" out of the ACCA statute. For this reason, we conclude that McGill's Florida crime of possession of an outlawed short-barreled shotgun is not "similar in kind" to the crimes listed in the ACCA's residual clause. See Begay, 553 U.S. at 143.

Id. at 1279.

Further, to the extent that Begay requires the court to compare the risk created by a putative residual clause predicate to that created by the enumerated crimes, possession of a short-barreled shotgun fails to measure up. Common-sense tells us that possession of a dangerous item does not pose the same or similar degree of risk as use of that item. See also Serafin, 562 F.3d at 1115 (stating that "the danger from an unregistered short-barreled rifle is inherent to its use, not merely in its possession"). For this reason, as well, the offense does not qualify as a violent felony under the ACCA.

## IV. CONCLUSION

For the foregoing reasons, I conclude that while defendant's substantial battery conviction is a proper ACCA predicate, his possession of a short-barreled shotgun offense is not. According, he does not qualify for an enhanced sentence under the ACCA.

11

Dated at Milwaukee, Wisconsin, this 24th day of February, 2011.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge